# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

DAMIEN A. SUBLETT                                                      PLAINTIFF

v.                                               CIVIL ACTION NO. 5:17-CV-P195-TBR

JAMES BEAVERS *et al.*                                            DEFENDANTS

## MEMORANDUM OPINION

      This is a *pro se* action brought by a convicted prisoner. The Court has granted Plaintiff Damien A. Sublett leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF COMPLAINT

      Plaintiff has filed a complaint and supplemental complaint in this action. He sues two Defendants in their individual capacities - James Beavers, of Kentucky State Penitentiary (KSP) Internal Affairs; and Wendy M. Walrod, Kentucky Department of Corrections (KDOC), Assistant Branch Manager, Offender Information Services. Plaintiff claims that these Defendants released and/or read confidential information from his prison record to the public.

      Plaintiff first explains that he filed a prior action in this Court against officials at KSP where he is incarcerated. *See Sublett v. Sheets et al.*, Civil Action No. 5:15-cv-199-TBR. In the instant action, Plaintiff complains that Defendant Walrod violated his rights by producing a certified copy of his disciplinary reports, PREA complaints, and investigations in the prior action. He attaches as an exhibit to his supplemental complaint a document signed by Defendant Walrod on October 24, 2017, in which she certified that she was producing a true and accurate copy of these records for that action (DN 6-2). Plaintiff also attaches a copy of the Witness and

Exhibit List filed by one of the defendants in that action which includes several of Plaintiff's disciplinary reports. (*Id.*)

Plaintiff claims that Defendant Beavers received a copy of these records from Defendant Walrod and that on November 20, 2017, Defendant Beavers:

> read sexual action of acts made by [Plaintiff] as of masturbation and sexual acts classifying [Plaintiff] as a aggressive sexual preditor and sexual aggressor at female staff . . . [Defendant] Beavers . . . read to the public sexual acts that [Plaintiff] would expose his persons to female as a sexual motive. These documents are currently Public Record from the Prison Rape Elimination and Disciplinary Report. [Plaintiff] has been taunted by KSP Security Staff via a calling of [Plaintiff] a sexual deviant and sexual preditor. This has caused [Plaintiff] great shame and embarrassment to where [Plaintiff] tried to kill himself. This action by Wendy Walrod of releasing these confidential private records to [Defendant] Beavers and [Defendant] Beavers to the public some 10 or more sexual document in which [Plaintiff] was performing a sexual act is currently still being accessed by the public.
>
> In his supplemental complaint, Plaintiff clarifies as follows:
>
> [Defendant] Walrod released these confidential document per C.P.P. 6.6 and KRS 61.878 without Sublett consent to Megan P. O'Reilly, [the attorney representing a defendant in *Sublett v. Sheets et al.*, 5:15-cv-199]. [O'Reilly] had Department of Corr. Internal Affairs employed at [KSP] [Defendant] Beavers read in open court [Plaintiff]'s disciplinary reports and PREA complaints . . . to the public on November 20, 2017. [Defendant] Beavers read explicit sexual acts performed by [Plaintiff] and informing the Public that [Plaintiff] is a sexual aggressor per PREA standard. [Defendant] Beavers read out loud over 10 document related to [Plaintiff]'s personal sexual acts.

Plaintiff writes that as a result of Defendants' actions, he tried to kill himself for the first time in his life and that "the humiliation follow me back to the prison and my family read it on the internet." He then states: "Information regarding private sexual matters warrants constitutional protecting against public dissemination."

Plaintiff claims that Defendants' actions violated his rights under the Fourteenth Amendment. Plaintiff also attaches to his complaint provisions of the Kentucky Open Records Act and institutional policies concerning the confidentiality of inmate records.

As relief, Plaintiff seeks compensatory and punitive damages. He also requests the Court to "remove the document from public view."

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979),

or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Fourteenth Amendment

The Sixth Circuit recognizes a right to informational privacy under the Fourteenth Amendment, but unlike other circuits, "'[it] has developed and applied a different approach to assessing informational privacy claims' that 'requires that the asserted privacy interest implicate a fundamental right.'" *Lee v. City of Columbus*, 636 F.3d 245, 259 (6th Cir. 2011) (quoting *Lambert v. Hartman*, 517 F.3d 433, 442 (6th Cir. 2008)). The court has repeatedly rejected the idea that there is "a general constitutional right to non-disclosure of private information." *Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2008); *see also Lee*, 636 F.3d at 261 (city's requirement

4

that employees returning from sick leave disclose the "nature of [their] illness" to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *J.P. v. DeSanti*, 653 F.2d 1080, 1091 (6th Cir. 1981) (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various agencies).

A plaintiff alleging a violation of his right to informational privacy must demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (quoting *DeSanti*, 653 F.2d at 1090). Only after a fundamental right is identified should the court proceed to the next step of the analysis - balancing the government's interest in disseminating the information against the individual's interest in keeping the information private. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998). Applying these standards, the Sixth Circuit has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, *see Kallstrom*, 136 F.3d at 1061; and (2) where the information released was of a "sexual, personal, and humiliating nature." *Bloch*, 156 F.3d at 684; *see also Lambert*, 517 F.3d at 440.

For purposes of this initial review only, the Court will assume that Plaintiff has alleged that Defendants released information of a "sexual, personal, and humiliating nature" which could lead to bodily harm.

However, when the Court turns to the second factor in the test which requires balancing the government's interest in disseminating the information against the individual's interest in keeping the information private, it is clear that this factor overwhelmingly weighs in Defendants' favor. First, "privacy rights can be outweighed by a strong governmental interest, such as the need for . . . marshaling a defense to constitutional claims," which is the case here. *Guarneri v. Wood*, No. 08-CV-792 (TJM/DRH), 2011 U.S. Dist. LEXIS 117129, at *44 (N.D.N.Y. Sept. 2, 2011). Moreover, courts generally agree that an individual's right to privacy with regard to certain information is waived when the individual places the information at issue in a lawsuit. *See, e.g.*, *Thomas v. Carrasco*, No. 1:04-cv-05793-MJS (PC), 2010 U.S. Dist. LEXIS 108918, at *12 (E.D. Cal. Oct. 13, 2010) ("[T]o the extent an individual has a right to privacy in his medical records, such right is waived by the filing of a lawsuit that puts the individual's medical condition at issue.") (collecting cases); *McKinnon v. Fred*, No. 306 CV 147 (JGM), 2007 U.S. Dist. LEXIS 59900, at *14 (D. Conn. Aug. 16, 2007) ("An inmate may waive his privacy right in his medical history through a variety of acts including . . . commencement of a lawsuit. . . . Prior to this incident, plaintiff mentioned his HIV status in documents he submitted in two of his other lawsuits. . . . Thus, he has waived his privacy right and his HIV status is a matter of public record."); *Woods v. Goord*, No. 01 CIV. 3255 (SAS), 2002 U.S. Dist. LEXIS 7157, at *36 (S.D.N.Y. Apr. 23, 2002) ("It is settled law that release of an inmate's medical records in defense of litigation does not violate any right of the inmate when he has filed suit against prison officials.").

In *Sublett v. Sheets et al.*, Plaintiff filed a complaint against two prison officials and one prison nurse. In that action, he claimed that the first female prison official violated his rights by filing a false disciplinary report against him after he filed a grievance report against her for "directly and clearly staring at [his] penis while [he] was standing and urinating." (DN 8-1, Supplemental Complaint). He claimed that the second female prison official violated his rights by filing a false disciplinary report against him for "lying in [his] bed masturbating" because he had initiated the lawsuit against the first official. *Id*. Finally, Plaintiff claimed that the female prison nurse violated his rights by watching him "naked in the shower drying his genital area . . . for a full five minutes." *Id*. In their motion for summary judgment, the two prison officials attached the prison disciplinary report filed against Plaintiff "for laying on his bunk with his penis out masturbating above his waist band." (DN 58-5). In addition, although Plaintiff specifically sues Defendant Walrod for her role in the production of his disciplinary records in that action, the docket sheet shows that a subpoena *duces tecum* was issued to the KDOC for Plaintiff's "inmate disciplinary records, PREA investigation reports, . . . including write-ups and investigations . . ." (DN 78-1). Moreover, to the extent that Plaintiff sues Defendant Beavers in the instant action for his reading of Plaintiff's disciplinary reports for inappropriate sexual behavior aloud at trial, the docket sheet reflects that the Court ruled that Plaintiff's disciplinary reports "relating to past instances of exposing himself and/or masturbating in front of prison officials" were highly relevant to the case and admissible as evidence at trial. (DN 144). Based upon this litigation history, it is clear that Plaintiff placed the information about which he complains Defendants in this action released at issue when he initiated his prior suit against KSP prison officials. As such, Court the finds that Plaintiff has failed to state a Fourteenth Amendment claim against either Defendant in this action.

Moreover, to the extent that Plaintiff complains that his disciplinary history is now on the internet for others to read, the Supreme Court has noted:

> A trial is a public event. What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. And we can see no difference though the conduct of the attorneys, of the jury, or even of the judge himself, may have reflected on the court. Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492-93 (1975) (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)); *see Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) (events which transpire in open court are a matter of public record); *In re Application of Nat'l Broadcasting Co. v. United States*, 635 F.2d 945, 949 (2d Cir. 1980) (public has the right to inspect and copy judicial records). Further, federal courts have held that "all materials that are the subject of an evidentiary ruling by the court, whether or not found admissible, are part of the record for purposes of the public's right to inspect and copy." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 899 (C.D. Pa. 1981); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982), *cert. denied*, 460 U.S. 1051 (1983) (ruling that documents considered during the "adjudication stage" of a lawsuit "should, absent exceptional circumstances, be subject to public scrutiny"); *Pelosi v. Spota*, 607 F. Supp. 2d 366 (E.D.NY. 2009) (collecting cases).

Thus, because the documents that Plaintiff complains about in the instant action were part of the trial record in the prior action, they are part of the public record and subject to placement in the Court's electronic case management system.

**B. Prison Rape Elimination Act (PREA)**

Having addressed what appears to be the gravamen of Plaintiff's complaint, the Court next turns to Plaintiff's suggestion that Defendants violated his rights under the PREA by failing

8

to keep information from his PREA records confidential.  This claim is without merit because the PREA does not provide a private right of action.  Where neither the text nor the structure of a statute indicate that Congress intended to create new individual rights, "there is no basis for a private suit, whether under § 1983 or under an implied right of action."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).  Although the Sixth Circuit Court of Appeals has not addressed this issue, many district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.  *See, e.g.*, *Peterson v. Burris*, No. 14-cv-13000, 2016 U.S. Dist. LEXIS 853 (E.D. Mich. Jan. 6, 2016) (collecting cases holding that PREA creates no private right of action); *Beckham v. Keaton*, No. 14-CV-159, HRW, 2015 U.S. Dist. LEXIS 29736 (E.D. Ky. Mar.10, 2015); *Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 U.S. Dist. LEXIS 129249 (W.D. Ky. Sept. 16, 2014); *Good v. Ohio Dep't of Rehab & Corr.*, No. 2:11-cv-857, 2011 US Dist LEXIS 127558 (S.D. Ohio Nov. 3, 2011).

**C. Violations of State Law or Procedure**

Finally, the Court observes that Plaintiff attached to his complaint provisions of the Kentucky Open Records Act and institutional policies concerning the confidentiality of inmate records.  However, as noted above, § 1983 claims may only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Thus, allegations of state law violations will not support a § 1983 claim. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003).  Similarly, a § 1983 claim may not be based upon a violation of state procedure or policy that does not violate federal law. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of*

9

*Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 U.S. App. LEXIS 9509 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Thus, any § 1983 claims based upon a failure to follow state law and/or policy are without merit.

## IV. CONCLUSION

For the foregoing reasons, this action will be dismissed by separate Order pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Date:


cc: Plaintiff, *pro se*
      Defendants
4413.011